Upon review of the competent evidence of record, and upon reconsideration of the evidence, the Full Commission MODIFIES the Opinion and Award of the deputy commissioner. The Full Commission affirms the conclusion that plaintiff unjustifiably refused suitable employment but reverses the conclusion that the surgery performed by Dr. Stocks should not be approved.
***********
 EVIDENTIARY RULING
Plaintiffs motion to exclude defendants exhibit 1, the 26 August 1999, letter from Dr. Rendleman to plaintiffs counsel is DENIED.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement were received into evidence.
2. The employee-employer relationship existed between plaintiff-employee and defendant-employer at the time of the incident.
3. Rex Healthcare was self-insured at the time of the incident.
4. The date of the injury was 24 October 1994.
5. The parties were subject to the North Carolina Workers Compensation Act at the time of the alleged incident and that defendant-employer employed the requisite number of employees to be bound under the provisions of said Act.
6. Following plaintiffs injury, defendant accepted compensability and a Form 21 Agreement for Compensation for Disability for the payment of total disability benefits from the date of injury and continuing for "necessary weeks was submitted and approved by the Commission.
7. Following plaintiffs injury, she remained out of work, was totally disabled, and was paid total disability compensation pursuant to various Form 26 Supplemental Agreement as to Payment of Compensation on file with the Commission as follows: 26 October 1994 though 20 October 1994, 2 November 1994 through 6 November 1994, 8 November 1994 through 13 November 1994, 15 November 1994 through 27 November 1994, 25 September 1995 through 7 February 1996, 19 February 1996 through 20 February 1996, 1 March 1996, 4 March 1996, 16 March 1996 through 24 March 1996, and 29 March 1996 through 25 June 1997.
8. On 25 June 1997, defendant unilaterally terminated payment of plaintiffs total disability benefits without obtaining prior approval from the Commission.
9. On 11 July 1997, defendant filed a Form 24 Application to Terminate or Suspend Payment of Compensation.
10. The Form 24 application was received by Special Deputy Commissioner Amy L. Pfeiffer on or about 4 August 1997. An informal hearing took place on 3 September 1997 with defendants claim representative appearing on behalf of defendant to suspend payment of compensation from 2 July 1997.
11. On 10 September 1997, Special Deputy Commissioner Amy L. Pfeiffer entered an Administrative Decision and Order approving defendants Form 24 application and authorizing defendants to suspend payment of compensation as of 2 July 1997.
12. Defendant has not paid any total disability compensation to plaintiff since 10 September 1997, the date that Special Deputy Commissioner Amy L. Pfeiffers Administrative Order approved defendants Form 24 application. However, defendant agreed to pay plaintiff total disability benefits from 25 June 1997 (the date benefits were unilaterally discontinued) through 1 July 1997.
13. It was stipulated that the average weekly wage of plaintiff at the time of the alleged injury was $341.70, yielding a weekly compensation rate of $227.81.
14. Plaintiffs medical and rehabilitation records marked as exhibit 1 were received into evidence.
15. Defendants Answers to Plaintiffs First Set of Interrogatories and Request for Production of Documents were marked as exhibit 2 and received into evidence.
16. A Form 33 Request that Claimed be Assigned for Hearing, dated 1 April 1999, was marked as exhibit 3 and received into evidence.
17. A Form 33R Response to Request that Claim be Assigned for Hearing, dated 5 April 1999, was marked as exhibit 4 and received into evidence.
18. A Form 26 Supplemental Agreement as to Payment of Compensation, dated 8 October 1996, was marked as exhibit 5 and received into evidence.
19. A Form 28U Employees Request that Compensation be Reinstated After Unsuccessful Trial Return to work, dated 21 March 1996, was marked as exhibit 6 and received into evidence.
20. A Form 28, dated 2 April 1996, was marked as exhibit 7 and received into evidence.
21. A Form 28, dated 29 March 1996, was marked as exhibit 8 and received into evidence.
22. A Form 26, dated 8 October 1996, was marked as exhibit 9 and received into evidence.
23. A Form 28B Report of Employer of Compensation and Medical Compensation Paid and Notice of Right to Additional Medical Compensation, dated 12 December 1994, was marked as exhibit 10 and received into evidence.
24. A return to work report, dated 9 December 1994, was marked as exhibit 11 and received into evidence.
25. A Form 26, dated 8 October 1996, was marked as exhibit 12 and received into evidence.
26. A Form 18 Notice of Accident to Employer received by the Commission on 26 January 1996 was marked as exhibit 13 and received into evidence.
27. A Form 28 Return to Work, dated 27 September 1995, was marked as exhibit 14 and received into evidence.
28. A Form 28T Notice of Termination of Compensation by Reason of Trial Return to Work, dated 8 October 1996, was marked as exhibit 15 and received into evidence.
29. A Form 26, dated 8 October 1996, was marked as exhibit 16 and received into evidence.
30. A Form 28, dated 31 October 1996, was marked as exhibit 17 and received into evidence.
31. A Form 26, dated 8 October 1996, was marked as exhibit 18 and received into evidence.
32. A Form 26, dated 8 October 1996, was marked as exhibit 19 and received into evidence.
33. A return to work report, dated 7 November 1994, was marked as exhibit 20 and received into evidence.
34. A Form 26, dated 21 October 1996 was marked as exhibit 21 and received into evidence.
35. A return to work report, dated 16 November 1994, was marked as exhibit 23 and received into evidence.
36. A Form 28B marked as exhibit 24 was received into evidence.
37. A Form 25N Assignment of Rehabilitation marked as exhibit 25 was received into evidence.
38. A return to work report, dated 16 November 1994, was marked as exhibit 26 and received into evidence.
39. A Form 26 received by the Commission on 22 March 1995 was marked as exhibit 27 and received into evidence.
40. A Form 26, dated 23 February 1995, was marked as exhibit 28 and received into evidence.
41. A Form 21 Agreement for Compensation for Disability, dated 21 October 1996, was marked as exhibit 29 and received into evidence.
42. A Form 21 was marked as exhibit 30 and received into evidence.
43. A Form 19 Employers Report of Injury to Employee marked as exhibit 31 was received into evidence.
44. A Form 28B, dated 13 July 1999, was marked as exhibit 32 and received into evidence.
45. A videotape of plaintiffs activities marked as exhibit 33 was received into evidence.
***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was thirty-one years old. She had a high school degree. Plaintiff had been employed as a nursing assistant by defendant for almost three years prior to her compensable injury by accident.
2. On 25 October 1994, plaintiff fractured her left ankle when she slipped and fell while working.
3. On 25 September 1995, David A. Rendleman, M.D., performed reconstructive surgery on plaintiffs left ankle. Following the surgery, plaintiff experienced some numbness on the side of her left foot. Plaintiffs numbness did not resolve and Dr. Rendleman eventually diagnosed her with reflex sympathetic dystrophy, or RSD.
4. On 7 May 1996, an examination by Lewis H. Stocks, M.D., revealed that plaintiff had sustained extensive damage to her left foot. She had atrophy of the muscle and serious leathery skin changes in her left foot.
5. Kevin L. Speight, M.D., examined plaintiff on 18 September 1996. Plaintiff reported a history of stinging sensations in her toes and the lateral aspect of her left foot, intermittent episodes of swelling, and numbness in her left foot that began after her ankle surgery. Dr. Speight diagnosed plaintiff with a sural nerve injury.
6. Reflex sypathetic dystrophy, or RSD, is an older nomenclature for what is now called chronic regional pain syndrome Type I. RSD is diagnosed when there is no injury to a specified nerve, but there is a constellation of symptoms that indicate some sympathetically maintained pain. An injury to a named nerve is known as chronic regional pain syndrome Type II or causalgia.
7. As a result of her compensable injury by accident, plaintiff sustained an injury to the sural nerve in her left foot. However, plaintiffs condition progressed beyond that injury into a condition appropriately classified as RSD.
8. Beginning March 1997, plaintiff began to receive Social Security disability payments in an amount equal to or greater than the amount she was earning while employed by defendant.
9. In a letter dated 5 June 1997, defendant offered plaintiff a full-time receptionist position at the birth center in the hospital. The essential duties of this job included: directing callers to a destination after recording a name, time of day, and issuing a visitors pass; answering a phone and providing information about a patients status and location; answering routine questions about both hospital and departmental policies and procedures; and maintaining data bases as required. This job was a bona fide job which was available in the competitive marketplace. Plaintiffs treating physician, Clarence P. Huggins, III, M.D., approved the receptionist position as being consistent with the limitations established as a result of an October 1996 functional capacity evaluation.
10. In a letter dated 25 June 1997, defendant advised plaintiff that the receptionist position was still available to her.
11. Plaintiff never accepted the receptionist position offered to her by defendant. Plaintiff did not believe that she could physically do this job. However, the evidence tends to show that plaintiff was in fact physically able to perform the receptionist job.
12. On 9 September 1997, David A. Rendlemen, M.D., plaintiffs authorized treating surgeon, restricted plaintiff from returning to work. In his deposition testimony, Dr. Rendlemen stated that he did not believe at the time that plaintiff was able to return to work during the time period that plaintiff was offered the receptionist job. However, upon reviewing the videotaped activities of plaintiff during July 1998, Dr. Rendleman revised his earlier assessment and concluded that plaintiff exhibited enough ability to walk and maneuver to have performed the job. It was apparent that plaintiff had exaggerated her physical limitations. After 1 July 1997, plaintiff was capable of performing the light duty receptionist position that defendant offered to her.
13. On 7 September 1997, Dr. Rendleman had advised plaintiff to undergo a left sympathectomy, based on plaintiffs complaints. Dr. Rendleman warned plaintiff that delaying this option would lessen the likelihood of success of this surgical procedure. On 30 March 1998, plaintiff informed Dr. Rendleman that she did not want to undergo the sympathectomy. Plaintiff did not want to risk the possibility of paralysis that could result from a sympathectomy because she was responsible for caring for her two children.
14. After undergoing an examination by Dr. Stocks on 7 July 1998, plaintiff decided to undergo the left sympathectomy surgery. Defendant sought a second opinion from Michael D. Gwinn, M.D. Dr. Gwinn recommended that she plaintiff continue to take the medication, Neurotin, a tricyclic antidepressant, and attempt a program of pool exercises in lieu of undergoing a sympathectomy. In Dr. Gwinns opinion, plaintiffs lack of significant benefit from lumbar sympathetic ganglion blocks established that a sympathectomy was less likely to be as effective as the use of Neurotin and pool therapy.
15. On 21 August 1998, Dr. Stocks performed a left sympathectomy on plaintiffs left foot. Defendant did not authorize this surgery.
16. Plaintiff received no long-term benefit from the left sympathectomy performed by Dr. Stocks. Nevertheless, the Commission declines to rule that this surgery was an unreasonable effort to provide plaintiff some relief from pain.
17. As a direct and natural result of the 25 October 1994 compensable injury by accident and resulting 21 September 1995 ankle surgery, plaintiff sustained causalgia in her left foot, with RSD symptoms.
18. As of 28 March 1998, plaintiff had reached maximum medical improvement and retained a twenty-five percent permanent partial disability to her left foot. The record does not indicate a new date of maximum medical improvement following the sympathectomy, nor is there evidence of how long plaintiff would have been required to be out of work for the surgery and recuperation.
19. As a result of the 24 October 1994 compensable injury by accident, plaintiff sustained a twenty-five percent permanent partial disability to her left foot as a result of RSD. There is no evidence that this rating would change as a result of the sympathectomy.
20. Just prior to the hearing before the deputy commissioner, defendant paid plaintiff total disability benefits due for the period of 25 June 1997 through 1 July 1997.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff unjustifiably refused suitable employment offered by defendant, and her benefits were properly terminated as of 2 July 1997. G.S. 97-32.
2. Plaintiff is entitled to receive permanent partial disability compensation in the amount of $227.21 per week for thirty-six weeks for her left foot injury. G.S. 97-31(14).
3. Defendant should pay all medical expenses incurred or to be incurred by plaintiff as a result of her injury by accident for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, give relief, or tends to lessen plaintiffs period of disability, including the left sympathectomy performed by Dr. Stocks. G.S. 97-25.
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff permanent partial disability benefits at the rate of $227.21 per week for thirty-six weeks. Any accrued amount shall be paid to plaintiff in a lump sum, subject to the attorneys fees approved in this Award.
2. Defendant shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of her injury by accident for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, give relief, or tends to lessen plaintiffs period of disability, including the left sympathectomy performed by Dr. Stocks.
3. Five percent of the amount awarded in paragraph 1 shall be deducted and paid as attorneys fees directly to plaintiffs former counsel, Keith Shackleford.
4. Twenty percent of the amount awarded in paragraph 1 shall be deducted and paid as attorneys fees directly to plaintiffs current counsel, John McCabe.
5. Plaintiffs request that Dr. Buttar be approved as her authorized treating physician is DENIED.
6. Defendant shall pay the costs.
 S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER